HARVARD LAW SCHOOL LIBRARY.

DAVID BUSH et al. *v.* VOLNEY STAMPS.

The creditor has the right to be substituted to the place of the surety for whose use the deed of trust was executed, but this substitution or subrogation can give him no higher right, than that claimed by the surety, which must be tried by the instrument which creates it.

The deed of trust which created the rights of the surety provides, that should judgment be at any time rendered on said note against the surety (S.), and P. should fail to satisfy the same, then it should be the duty of the trustees to sell the property at such time as shall be necessary, &c. *Held*, that no judgment having been obtained against the surety (S.), the creditor can claim no more at the hands of the court, than the surety could claim from the trustees.

*Bibb* v. *Martin*, 14 S. & M. 92, cited and confirmed by the court.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The appellee, who was the complainant in the court below, filed his bill for the purpose of subjecting a house and lot in the town of Port Gibson to the payment of a note made by J. O. Pierson, with M. D. Shelby as his surety, for $3,500, dated June 19, 1839, and payable six months after date. He claims to have a lien, by virtue of the doctrine of subrogation, upon said property, under a deed of trust executed in April, 1840, by J. O. Pierson, to H. T. Ellett and D. Bush, junior, as trustees, by which Pierson conveyed said property to said trustees, for the protection and indemnity of certain persons who had previously

become his sureties, and among them of Shelby, the surety upon the foregoing note.

The real defendant in interest to the bill is David Bush, senior, who is in possession of the property, claiming it under a purchase from the firm of J. O. Pierson & Co., and also by virtue of a purchase at execution sale, under a judgment against J. O. Pierson and others, rendered in 1838, nearly two years before the execution of the deed of trust.

The defendants in the court below, Bush, senior, and Bush, junior, demurred to the bill. Their demurrer was disallowed by the chancellor. They then filed their answers.

The bill sets out the note made by Pierson and Shelby to Stamps in June, 1839, and the deed of trust executed by Pierson in April, 1840, for the indemnity and protection of Shelby, and others of his sureties. It then alleges, that no part of said note has been paid; that Pierson and Shelby were insolvent at the date of the maturity of the note; that they have continued insolvent ever since, and that they were both discharged as bankrupts in 1842; and that D. Bush, junior, was insolvent at the date of the deed of trust, and was discharged as a bankrupt in 1842. Upon these allegations, the complainant insists, that he is entitled to be subrogated to the rights of Shelby under the deed of trust, and to have the property sold to pay his note.

The language of the deed of trust is as follows: — " In trust that if the said Pierson should pay and fully satisfy the said two promissory notes, or make such provisions as entirely to release Shelby, Rundell, and Clark from all liability upon them, then the said deed of trust to be null and void; and in trust furthermore, that should judgment be at any time rendered on said notes against Shelby, Rundell, and Clark, or either of them, and the said Pierson should fail to satisfy the same, then it should be the duty of said Ellett and Bush, junior, trustees, to advertise and sell said property, at such time as should be necessary, to protect the said Shelby, Rundell, and Clark from the effects of such judgment, and to appropriate so much of the proceeds as should be necessary to the satisfaction of said judgment, and to account for the balance to said Pierson."

The court decreed in favor of Stamps, and Bush appealed to this court.

*John B. Coleman* for appellants.

No judgment has ever been rendered against Shelby. We ask, upon what pretence does Stamps seek for a sale of the property? what benefit can he derive from being subrogated to the rights of Shelby under the deed of trust, when it is demonstrated, with mathematical certainty, that Shelby has no rights under it? We cannot be in error, either as to the intent or phraseology of the deed of trust; it is plain and unequivocal; the trustees can only sell after judgment shall have been rendered against Shelby.

Our position, then, is, that Stamps the creditor can be subrogated to no greater rights than Shelby the surety has. That Shelby the surety has no rights, and is entitled to no relief under the provisions of the deed; and consequently, as the only ground upon which Stamps pretends to be entitled to relief, is his right to be substituted to the place of Shelby, and as this substitution would avail him nothing, he is then entitled to no relief, and his bill must of necessity be dismissed.

"The creditor's equity rests upon the doctrine of subrogation or substitution, and therefore the creditor cannot claim the security, unless the surety had a right to come upon it. If, therefore, security be given to a contingent surety, such as an indorser of negotiable paper, to indemnify him, and his liability never becomes absolute, but he is discharged from default in giving notice, the payee cannot claim the benefit of the security, because, being appropriated only for the case of the indorser's becoming liable, the appropriation, in truth, never took effect at all." 1 White & Tudors, Lead. Ca. in Eq. 121; 12 Leigh, 387; 10 Ib. 206; 18 Ohio, 35.

These positions are fully sustained by this court in the case of *Bibb et al.* v. *Martin et al.* 14 S. & M. 87, where, at page 93, the court say: "It will thus be seen that, while the creditor has the right to be substituted to the place of the surety, this substitution or subrogation can give him no higher right. The right of the surety must be tried by the instrument which creates it."

This is all we ask; try the right of Shelby by the deed of trust, and then give Stamps, if you please, every thing that Shelby is entitled to, but give him nothing more; give him no higher right. Again, the court say : " The complainants (that is, the creditors) can occupy no' higher ground than the sureties. The mortgage was not a security for the debt, or for the original note, the evidence of the debt. To give it that extent, would go beyond the intention and the undertaking of the mortgagor."

So we say in this case. Stamps the creditor can occupy no higher ground than Shelby the surety. The deed of trust was not a security for the debt, or for the original note, the evidence of the debt. To give it that extent, would go beyond the intention and the undertaking of the grantor.

The foregoing decision by the court we consider conclusive in the decision of this case.

No counsel for appellee.

Mr. Justice Fisher delivered the opinion of the court.

This was a bill filed by a creditor to be substituted to the rights of a surety, in a deed of trust executed for his indemnity in a certain contingency by the principal debtor.

This court said in the case of *Bibb et al.* v. *Martin et al.* 14 S. & M. 92, that "the doctrine of subrogation rests upon very obvious principles of equity;" that if either the creditor or the surety at any time becomes bound, or at any time, before or after, takes a lien on real or personal property, the other party is entitled to the benefit of it; so that if the surety fail, the creditor may enforce the lien the surety may have taken. In short, either is entitled to stand in the shoes of the other in regard to all remedies. Quoting from 2 Tucker, Em. 492, " It will thus be seen that whilst the creditor has the right to be substituted to the place of the surety, this substitution or subrogation can give him no higher right." " The right of the surety must be tried by the instrument which creates it." 14 S. & M. 93.

The complainant is seeking to be substituted to the rights of

Bush et al. *v.* Stamps.

Shelby the surety; his rights must be tried by the deed of trust which creates them, and it provides as follows, to wit: "that should judgment be at any time rendered on said note against Shelby, and the said Pierson should fail to satisfy the same, then it should be the duty of the trustees to sell the property, at such time as should be necessary to protect Shelby from the effect of such judgment."

No judgment has ever been recovered on the note against Shelby. The trustees are only empowered by the deed to sell the property to protect the surety against the "effect" of the judgment. This is all the right which the principal debtor thought proper to confer on the surety; and the creditor, in the language of the authority, standing in the shoes of the surety, can claim no more at the hands of the court than the surety could claim at the hands of the trustees. To adopt a different rule, would not be to enforce the contract as assented to by the principal, but to make one for the benefit of the creditor. Courts never vary the contracts of the parties, but only enforce them as the parties themselves have made them.

It is however said, that the principal and the surety are both discharged bankrupts, and therefore no judgment could have been recovered against them. In reply to this, it is sufficient to state that the deed of trust was executed long after the debt became due; and it is manifest, from its stipulations, that Shelby had no right, before his bankruptcy, to order the trustees to sell the property under the deed, and that the creditor must be confined to the rights which Shelby then had.

Looking into the whole case, we are of opinion that the decree ought to be reversed, and the bill dismissed.